**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NATIONAL CASUALTY COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>PORVEN, LTD., d/b/a PORCELANOSA USA,<br><br>Defendant. | Case No.<br><br>Judge: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, National Casualty Company ("NCC"), an Ohio corporation, by and through its attorneys, DENTONS US LLP, state the following as its Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, against Defendant, Porven, LTD., d/b/a Porcelanosa USA, a Delaware corporation ("Porven").

**Introduction**

1. This is a Declaratory Judgment action to obtain a declaration of the rights and obligations under commercial general liability insurance policies and commercial umbrella insurance policies issued by NCC to Porven. Porven has sought coverage from NCC in connection with lawsuits entitled *Juan Carlos Serna-Terrones v. 3M Company, et al.*, Los Angeles Superior Court Case No.: 25STCV35970 (the "Serna-Terrones Suit") and *Troy Rodger Clyde et al. v. Aristech Surfaces LLC et al.*, King County Superior Court (Washington) Case No. 26-2-06063-1 (the "Clyde Suit") (collectively the "Underlying Actions"). True and correct copies of the

complaints in the Serna-Terrones Suit and the Clyde Suit have been attached as **Exhibits 1** and **2**, respectively.

**Jurisdiction and Venue**

2. NCC is an insurance company incorporated under the laws of the state of Ohio with its principal place of business in Columbus, Ohio. NCC is authorized to issue policies of insurance in the state of New Jersey.

3. Defendant Porven is a corporation organized under the laws of the state of Delaware. Porven's principal place of business is Ramsey, New Jersey. (*See* **Exhibit 3**, Porven 2025 California SoS Filing). The filing also lists a New Jersey address for Porven's CEO and CFO. Porven is the named insured under the policies at issue in this suit.

4. The terms and conditions provided on Porven's website, https://store.porcelanosa.com/us/terms-and-conditions, are "GOVERNED ACCORDING TO THE LAWS OF THE STATE OF NEW JERSEY, U.S.A., WITHOUT REFERENCE TO ITS CONFLICTS OF LAW PRINCIPLES."

5. The terms and conditions provided on Porven's website include an agreement to arbitrate, https://store.porcelanosa.com/us/terms-and-conditions, which applies the law of the state of New Jersey to the extent any dispute over arbitration is not governed by the Federal Arbitration Act.

6. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff NCC and Defendant, Porven; and (b) the amount in controversy, including the potential cost of defending and indemnifying Porven in the Underlying Actions exceeds $75,000, exclusive of interest and costs.

7. Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the alleged events or omissions giving rise to this lawsuit occurred in this District, including where the insurance policies were negotiated, issued, and delivered.

8. An actual justiciable controversy exists between NCC, on the one hand, and Porven, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

**The CGL Policies**

9. NCC issued five consecutive Commercial General Liability ("CGL") Policies to Porven, with policy periods September 2, 2021 to September 1, 2022 (Policy No. NGO0000063), September 1, 2022 to September 1, 2023 (Policy No. NGO0001061), September 1, 2023 to November 1, 2024 (Policy No. NGO0001149), November 1, 2024 to November 1, 2025 (Policy No. NGO0001313), and November 1, 2025 to November 1, 2026 (Policy No. NGO0002000) (collectively the "CGL Policies," attached hereto as **Exhibits 4, 5, 6, 7,** and **8,** respectively). The CGL Policies each carry a limit of liability of $1 million for each occurrence, $1 million for personal and advertising injury, and $2 million in the general aggregate.

10. The initial CGL Policy (NGO0000063) contains Change Endorsement No. 10 amending the Policy to change the insured address from 1301 S State College Blvd Ste E, Anaheim, CA 92805 to 600 Route 17 North, Ramsey, NJ 07446 effective September 2, 2021 (the inception date of the policy). On each subsequent CGL Policy, Porven's address is listed as Ramsey, New Jersey.

11. For CGL Policies NGO0001061, NGO0001149, NGO0001313, and NGO0002000 the insurance agent is listed N2G Worldwide Insurance Services, LLC, with an address listed in

Jersey City, New Jersey, with Agent No. 29602. In the initial CGL Policy (NGO 000063), the name and address of the agent are omitted but Agent No. 29602 is listed throughout, meaning that the same agent, N2G Worldwide Insurance Services, LLC in Jersey City, New Jersey, was also the agent for that policy.

12. The CGL Policies' Insuring Agreement for Coverage A - Bodily Injury and Property Damage Liability - reads as follows:

**1. Insuring Agreement**

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> > **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and
> >
> > **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> > **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> >
> > **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
> >
> > **(3)** Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period,

that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

*E.g.*, Exhibit 8 at p. 51 (CG 00 01 04 13).

13. CGL Policies NGO0000063 (2021-2022), NGO0001313 (2024-2025), and NGO0002000 (2025-2026) contain a SILICA OR SILICA-RELATED DUST EXCLUSION (the "CGL Silica Exclusion") that provides:

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

*E.g.*, Exhibit 8 at p. 133 (CG 21 96 03 05).

14. The CGL Policies also contain an exclusion for pollution (the "CGL Pollution Exclusion"). The CGL Pollution Exclusion for Coverage A states as follows:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> * * *
>
> **f. Pollution**
>
> **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
> **(2)** Any loss, cost or expense arising out of any:
>
> **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
>
> **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

*E.g.*, Exhibit 8 at p. 128 (CG 21 49 09 99).[1]

15. The CGL Pollution Exclusion for Coverage B states as follows:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> * * *
>
> **m. Pollution**
>
> "Personal and advertising injury" arising out of the actual, alleged or threatened

[1] The language of the Pollution Exclusion varies slightly from policy to policy, with Policies NGO0001149 (2023-2024), NGO0001313 (2024-2025), and NGO0002000 (2025-2026) having separate Total Pollution Exclusion endorsements. But each policy excludes coverage for "the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants[.]'"

> discharge, dispersal, seepage, migration, release or escape of “pollutants” at any time.

*E.g.*, Exhibit 8 at p. 57 (CG 00 01 04 13).

## THE UMBRELLA POLICIES

16. NCC issued four consecutive Commercial Umbrella Liability Policies to Porven, with policy periods January 1, 2023 to January 1, 2024 (Policy No. UNO0000140), January 1, 2024 to January 1, 2025 (Policy No. UNO0000257), January 1, 2025 to November 1, 2025 (Policy No. UNO0000282), and November 1, 2025 to November 1, 2026 (Policy No. UNO0000353) (the “Umbrella Policies,” attached hereto as **Exhibits 9, 10, 11, and 12,** respectively). The Umbrella Policies in effect from January 1, 2023 to November 1, 2025 carry a limit of $5,000,000 per occurrence and $5,000,000 in the aggregate, which increased to $10,000,000 per occurrence and $10,000,000 in the aggregate for the November 1, 2025 to November 1, 2026 policy period.

17. On each of the Umbrella Policies, Porven’s address is listed as Ramsey, New Jersey.

18. On each of the Umbrella Policies, the insurance agent is N2G Worldwide Insurance Services, LLC, with an address listed in Jersey City, New Jersey.

19. The Insuring Agreement for Coverage A (Bodily Injury and Property Damage Liability) of the Umbrella Policies reads as follows:

> **1. Insuring Agreement**
>
> **a.** We will pay on behalf of the insured the “ultimate net loss” in excess of the “retained limit” because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend the insured against any “suit” seeking damages for such “bodily injury” or “property damage” when the “underlying insurance” does not provide coverage or the limits of “underlying insurance” have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other “suit” seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily

injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

**(1)** The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

**c.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**d.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**e.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**f.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

*E.g.*, Exhibit 12 at p. 17-18 (CU 00 01 04 13).

20. The Umbrella Policies contain their own SILICA OR SILICA-RELATED DUST EXCLUSION (the "Umbrella Silica Exclusion"), which reads as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions** This insurance does not apply to: **SILICA OR SILICA-RELATED DUST**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way

responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions** This insurance does not apply to: **SILICA OR SILICA-RELATED DUST**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

*E.g.*, Exhibit 12 at p. 46 (CU 21 50 03 05).

21. The Umbrella Policies also contain an exclusion for pollution (the "Umbrella Pollution Exclusion"). The Umbrella Pollution Exclusion for Coverage A (via a separate endorsement) reads as follows:

**2. Exclusions**

This insurance does not apply to:

* * *

**i. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(a)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(b)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

For the purposes of this insurance, hostile fire means one that becomes uncontrollable or breaks out from where it is intended to be.

**(2)** "Pollution cost or expense".

*E.g.*, Exhibit 12 at p. 47 (CU 21 51 12 05).

22. The Umbrella Pollution Exclusion for Coverage B reads as follows:

**2. Exclusions**

This insurance does not apply to:

a. "Personal and advertising injury":

* * *

**(13) Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

*E.g.*, Exhibit 12 at p. 23 (CU 00 01 04 13).

**The Underlying Serna-Terrones Suit**

23. On December 9, 2025, Sernta-Terrones filed a complaint directed against multiple defendants, including Porven, in the Los Angeles County Superior Court, entitled *Juan Carlos Serna-Terrones v. 3M Company, et al.*, Case No. 25STCV35970 (the "Serna-Terrones Complaint").

24. The Serna-Terrones Complaint alleges that from 2018 to present (off an on), Serna-Terrones worked as a stone cutter, fabricator, and/or installer of stone products sold, manufactured, or fabricated by multiple defendants, including Porven. (**Exhibit 1,** ¶¶ 112, 128, 131-36).

25. The Serna-Terrones Complaint further alleges that during his work with defendants' "inherently hazardous stone products", Serna-Terrones was "exposed to and inhaled stone dust containing silica and other toxins and carcinogens, as well as artificial stone dust containing respirable crystalline silica (including quartz and cristobalite), metals (including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium) and volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene) emitted from these products." (**Exhibit 1,** ¶ 140.)

26. As a result of the exposure to "silica, metals and other toxins" by defendants, Serna-Terrones alleges that he "developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma)." (**Exhibit 1,** ¶ 141).

27. Serna-Terrones further alleges that "[a]ll stone products contain crystalline silica in varying concentrations from the lowest concentration of about 3-5% in marble to about 93-95% in traditional artificial stone." (**Exhibit 1,** ¶ 116).

28. Serna-Terrones alleges that he was first diagnosed with silicosis on May 12, 2025. (**Exhibit 1,** ¶ 145.)

29. The Serna-Terrones Complaint includes counts of negligence (first cause of action), fraudulent concealment (fourth cause of action), and breach of implied warranty (fifth cause of action) against Porven.

30. To date, there has been no judgment entered in the Serna-Terrones Suit and it remains pending.

**The Underlying Clyde Suit**

31. On February 18, 2026, Troy Rodger Clyde and Deborah Clyde filed a complaint directed against multiple defendants, including Porven, in the King County Superior Court (Washington), entitled *Troy Rodger Clyde et al. v. Aristech Surfaces LLC et al.*, King County Superior Court Case No. 26-2-06063-1 (the "Clyde Complaint").

32. The Clyde Complaint alleges that from 1993 to 2011, Troy Rodger Clyde ("Clyde") worked as a stone cutter and/or fabricator of stone products sold, manufactured, or fabricated by multiple defendants, including Porven. (**Exhibit 2,** ¶¶ 42-48).

33. The Clyde Complaint further alleges that during his work with defendants' "inherently hazardous stone products", Clyde was "exposed to and inhaled stone dust containing silica and other toxins and carcinogens, as well as artificial stone dust containing respirable crystalline silica (including quartz and cristobalite), metals (including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium) and

volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene) emitted from these products." (**Exhibit 2,** ¶ 52.)

34. As a result of the exposure to "silica, metals and other toxins" by defendants, including Porven, Clyde alleges that he "developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis, or scleroderma." (**Exhibit 2,** ¶ 54).

35. Clyde further alleges that "[a]ll stone products contain crystalline silica in varying concentrations from the lowest concentration of about 3-5% in marble to about 93-95% in traditional artificial stone." (**Exhibit 2,** ¶ 34).

36. Clyde alleges that he was first diagnosed with silicosis on October 13, 2025. (**Exhibit 2,** ¶ 57.)

37. The Clyde Complaint includes counts of products liability (first cause of action), fraud (second cause of action), and loss of consortium (third cause of action) against all defendants, including Porven.

38. To date, there has been no judgment entered in the Clyde Suit and it remains pending.

## THE INSURANCE CLAIMS

39. Porven tendered coverage of the Serna-Terrones Suit to NCC under CGL Policy No. NGO0001313 in or around February 2026.

40. On March 16, 2026, NCC responded, acknowledging receipt of the letter, but denying coverage. A true and correct copy of NCC's letter is attached as Exhibit 13. NCC

determined that it had no duty to defend or indemnify Porven under CGL Policy No. NGO0001313 because (1) the Serna-Terrones Suit alleged fraudulent concealment, and the policies do not cover fraud or fraudulent concealment; (2) the Serna-Terrones Suit alleged damages as a result of airborne particulates – coverage for which is excluded under the policies' pollution exclusions; and (3) the Serna-Terrones Suit alleged damages as a result of inhalation of silica or silica-related dust, coverage for which is excluded under the policy's silica or silica-related dust exclusion.

41. On September 3, 2026, Porven through counsel sent NCC a letter contesting the March 16, 2026 denial letter.

42. On September 14, 2026, Porven emailed NCC tendering the defense of the Clyde Suit.

43. Despite Porven appearing to only tender the Underlying Actions under one CGL Policy (No. NGO0001313), NCC has reviewed all of Porven's policies for potential coverage, and agreed to defend Porven under CGL Policies NGO0001061 (2022-2023) and NGO0001149 (2023-2024), which do not have a silica or silica-related dust exclusion.

## <u>COUNT I</u>

## (NO DUTY TO DEFEND OR INDEMNIFY UNDER CGL POLICIES - SILICA EXCLUSION – THE UNDERLYING ACTIONS)

44. NCC incorporates and restates each of the above paragraphs as if fully set forth herein.

45. For CGL Policies NGO0000063 (2021-2022), NGO0001313 (2024-2025), and NGO0002000 (2025-2026), the CGL Silica Exclusion expressly bars coverage for bodily injury arising "in whole or in part" out of the actual, alleged, threatened, or suspected inhalation or ingestion of silica or silica-related dust.

46. The Underlying Actions allege bodily injury as a result of the inhalation and ingestion of silica dust in the course of cutting, fabricating, and installing stone products.

47. The Underlying Actions allege precisely the mechanism (inhalation/ingestion of silica/silica-related dust) expressly stated in the CGL Silica Exclusion.

48. The Underlying Actions allege bodily injury from exposure to silica and silica-related dust.

49. Even if the Underlying Actions also allege exposure to other substances such as metals and volatile organic compounds, the CGL Silica Exclusion operates to preclude coverage because the Underlying Actions allege bodily injury at least “in part” from exposure to silica or silica-related dust, including that the plaintiffs in the Underlying Actions allege their exposure caused silicosis and other diseases caused by silica and that they received diagnoses of silicosis at different times.

50. Therefore, NCC has no duty to defend or indemnify Porven under CGL Policies NGO0000063 (2021-2022), NGO0001313 (2024-2025), and NGO0002000 (2025-2026), for either of the Underlying Actions.

51. An actual controversy exists between NCC and Porven, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

52. **WHEREFORE**, NCC respectfully prays that this Court enter a judgment declaring that NCC has no duty to defend or indemnify Porven under CGL Policies NGO0000063 (2021-2022), NGO0001313 (2024-2025), and NGO0002000 (2025-2026) for the Underlying Actions.

**COUNT II**

**(NO DUTY TO DEFEND OR INDEMNIFY UNDER UMBRELLA POLICIES – SILICA EXCLUSION – THE UNDERLYING ACTIONS)**

53. NCC incorporates and restates each of the above paragraphs as if fully set forth herein.

54. The Umbrella Policies independently contain a silica exclusion that bars coverage for bodily injury arising in whole or in part from inhalation or ingestion of silica and silica-related dust.

55. For the same reasons set forth in Count I, the Umbrella Silica Exclusion bars coverage under the Umbrella Policies for the Underlying Actions.

56. An actual controversy exists between NCC and Porven, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

57. **WHEREFORE**, NCC respectfully prays that this Court enter a judgment declaring that NCC has no duty to defend or indemnify Porven under the Umbrella Policies for the Underlying Actions.

**COUNT III**

**(NO DUTY TO DEFEND OR INDEMNIFY – POLLUTION EXCLUSION – THE UNDERLYING ACTIONS)**

58. NCC incorporates and restates each of the above paragraphs as if fully set forth herein.

59. The CGL Policies and the Umbrella Policies contain pollution exclusions barring coverage for bodily injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants. "Pollutants" is defined to include any solid, liquid, gaseous or thermal irritant or contaminant.

60. Silica dust constitutes a solid irritant or contaminant and therefore qualifies as a "pollutant" within the meaning of the CGL Policies and Umbrella Policies.

61. The plaintiffs in the Underlying Actions allege bodily injury arising from exposure to respirable crystalline silica dust in the course of cutting, fabricating, and installing stone products. Accordingly, the CGL Pollution Exclusion and the Umbrella Pollution Exclusion independently bar coverage for the Underlying Actions.

62. An actual controversy exists between NCC and Porven, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

63. **WHEREFORE**, NCC respectfully prays that this Court enter a judgment declaring that NCC has no duty to defend or indemnify Porven under the CGL Policies and Umbrella Policies for the Underlying Actions based on their respective Pollution Exclusions.

**COUNT IV**

**(NO DUTY TO DEFEND OR INDEMNIFY – ADDITIONAL GROUNDS - THE UNDERLYING ACTIONS)**

64. NCC incorporates and restates each of the above paragraphs as if fully set forth herein.

65. The obligations of NCC (if any) to defend and/or indemnify Porven in connection with the Underlying Actions are limited, barred or excluded by one or more of various other terms, conditions, and provisions of the CGL Policies and Umbrella Policies, including:

a. to the extent the Underlying Actions seek damages that do not constitute "bodily injury" as defined in the of the CGL Policies and Umbrella Policies;

b. to the extent the claims do not arise from an "occurrence" as defined in the of the CGL Policies and Umbrella Policies;

c. to the extent the Underlying Actions seek damages expected or intended from the standpoint of Porven, the insured;

d. to the extent the Underlying Actions seek uninsurable damages, including punitive or exemplary damages, fines, or penalties;

e. to the extent Porven failed to timely notify NCC of the Underlying Actions;

f. to the extent Porven failed to cooperate with NCC;

g. to the extent Porven has other valid and collectible insurance;

h. to the extent Porven voluntarily made payments or assumed obligations without NCC's consent;

i. to the extent the Underlying Actions seek damages for "bodily injury" that occurred outside of the policy periods of the CGL Policies and Umbrella Policies;

j. to the extent that the alleged bodily injury was known to Porven prior to the policy inception; and

k. to the extent that the claims in the Underlying Actions are otherwise barred by the terms, exclusions, conditions, definitions, endorsements, and limitations of the CGL Policies and Umbrella Policies.

66. NCC further reserves the right to assert all defenses which may be pertinent once the precise nature of the allegations is ascertained through discovery.

67. An actual controversy exists between NCC and Porven, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

**WHEREFORE**, NCC respectfully prays as follows:

(1) That this Court enter a judgment declaring that NCC has no duty to defend or indemnify Porven under the CGL Policies and Umbrella Policies for any off the Underlying Actions; and

(2) Such other relief as the Court deems just and proper.

Dated: October 30, 2026

Respectfully submitted,

/s/ Jessica L. Gallagher
Jessica L. Gallagher
Sulema Medrano (*pro hac vice forthcoming*)
Natalie M. Limber (*pro hac vice forthcoming*)
Andrew M. Pendexter (*pro hac vice forthcoming*)
Mary Strong (*pro hac vice forthcoming*)
Dentons US LLP
101 JFK Parkway
Short Hills, NJ 07078
Phone: (973) 912-7100
Fax: (973) 912-7199
jessica.gallagher@dentons.com
sulema.medrano@dentons.com
natalie.limber@dentons.com
andrew.pendexter@dentons.com
mary.strong@dentons.com
*Attorneys for Plaintiff*
*National Casualty Company*